IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Cory C. Bowden,<br>    Petitioner, | )<br>)<br>) |
| v. | )     1:19cv1415 (RDA/MSN) |
| I. Hamilton,<br>    Respondent. | )<br>)<br>) |

MEMORANDUM OPINION

Virginia inmate Cory Bowden filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, claiming that he was denied effective assistance of counsel and convicted based on evidence that was, as a matter of law, insufficient to support a guilty verdict. See Dkt. No. 1. On February 4, 2020, respondent filed a motion to dismiss and Rule 5 Answer, supported by a legal brief and documentary exhibits. See Dkt. Nos. 10-12. Petitioner, despite having been provided the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 13], did not file an opposition to respondent's motion. For the reasons explained below, respondent's motion to dismiss will be granted, and the underlying petition for writ of habeas corpus will be dismissed.

I. Background

Petitioner is in custody pursuant to a final judgment, entered March 8, 2016, of the Circuit Court of the County of Chesterfield. See CR15F00083-01, 02. After a jury found petitioner guilty of murder and use of a firearm in the commission of murder, the circuit court sentenced petitioner to life plus three years' incarceration. Id. Petitioner appealed his conviction to the Court of Appeals of Virginia, challenging the sufficiency of the evidence presented to the jury at trial. See Record No. 0480-16-2, p. 12. A single judge of that court denied the appeal on

October 16, 2016. Id. at p. 49. A three judge panel followed suit on December 20, 2016. Id. at p. 65. The Supreme Court of Virginia then refused Bowden's appeal on August 15, 2017. See Record No. 170092, p. 36.

On January 2, 2018, petitioner filed a petition for writ of habeas corpus in the circuit court in which he was convicted, alleging that he received constitutionally defective assistance of counsel. See CL18HC3012. The circuit court dismissed the habeas petition by order dated November 7, 2018, see id. at p. 130-143, and the Supreme Court of Virginia dismissed Bowden's petition for appeal on October 15, 2019, see Record No. 190156, p. 56.

On October 29, 2019, petitioner filed the instant petition. See Dkt. No. 1. He raises the following claims:

1. Petitioner's trial counsel was ineffective for:

    a. Failing to challenge prospective juror number 338 for cause when the juror stated that his cousin was a police officer for Chesterfield County;

    b. Failing to obtain a copy of the 911 call recording to impeach petitioner's son at trial;

    c. Failing to object to the prosecution's improper statement during closing argument;

    d. Failing to ask prospective jurors whether any of them were related to the victim;

    e. Failing to move for a mistrial on the grounds that the sheriff was present in the jury room while the jury observed the firearm during deliberations;

    f. Failing to object to a jury instruction that shifted the burden of proof with regard to the element of intent; and

2. The evidence was insufficient to convict petitioner because it left open the possibility that petitioner's act was the result of an accident.

Dkt. No. 1.

## II. Standard of Review

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant habeas relief. Pursuant to AEDPA, when a state court has addressed the merits of a claim raised in a subsequent federal habeas corpus petition, the reviewing federal court may not grant the petition on that particular claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2).[1] The question, then, "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

A state court's decision is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal court should grant relief under the "unreasonable application" clause if it finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In determining whether a state court's decision was based on an unreasonable determination of the facts unearthed at its own proceeding, a federal court reviewing a habeas

---

[1] Where a state court's adjudication is not rendered "on the merits," its decision is not entitled to the deferential review standard set out in § 2254(d).

3

petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)). "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude anything but [what the petitioner claims],' and when a state court's finding was 'clearly erroneous.'" Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1294 (11th Cir. 2015) (quoting Miller–El, 545 U.S. at 265).

### III. Analysis

#### A.   *Claims 1(a) – 1(f) – Ineffective Assistance of Counsel*

Petitioner argues that his attorney provided him ineffective assistance at several points during his prosecution and trial. To succeed upon an ineffective assistance claim, a petitioner must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong, the convicted defendant must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance." Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted). The prejudice component requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

"Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more

4

difficult." Richter, 562 U.S. at 105. Application of these two layers of deference effectively limits a federal court's review to a determination of "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

    i.    *Claim 1(a)*

First, petitioner claims that his trial counsel was ineffective because he failed to strike a juror for cause who, in response to a voir dire question, stated that his cousin was a police officer in Chesterfield County, the county in which plaintiff was arrested and prosecuted. See Dkt. No. 1. The state habeas court dismissed this claim on the basis that it failed to satisfy either prong of the Strickland test.

> The Court finds that petitioner has failed to demonstrate that counsel's performance was deficient. Defense counsel properly asked the juror if that relationship would impact the juror's ability to hear the evidence or make him more predisposed to the Commonwealth. The juror replied "no." (Tr. 36).
>
> A juror's familial relationship to a police officer is not *per se* disqualifying. Rather the "real test is whether [the juror] can decide the case on the evidence submitted and the law as propounded in the court's instructions." *Towns v. Commonwealth*, 234 Va. 307, 329, 362 S.E.2d 650, 662 (1987). The juror here responded that the relationship would not impact his ability to hear the evidence or make him more predisposed to the Commonwealth. *See Weeks v. Commonwealth*, 248 Va. 460, 475, 450 S.E.2d 379, 389 (1994 [sic] (juror's relationship with police officer not *per se* disqualifying).
>
> The Court finds that counsel had no valid basis to strike the juror for cause because the juror had indicated that he could be unbiased—in response to counsel's questions-- [sic] despite his familial relationship with a police officer in Chesterfield County. All of the jurors stated that they did not know the specific officers who were testifying in this case. (Tr. 25-27). Counsel was not required to make a meritless objection for cause, when such a motion would have been unsuccessful. *Cf. Correll v. Commonwealth*, 232 Va. 454, 470, 352 S.E.2d 352, 361 (1987) (holding counsel had no duty to object to admission of presentence report because it was admissible); *see also Moody v. Polk*, 403 F.2d 141, 151 (4th Cir. 2005) (holding counsel not required to file frivolous motions).
>
> The Court further finds that petitioner has failed to demonstrate a reasonable probability of a different result had counsel moved to strike the juror for cause, as such a motion would not have been successful. Accordingly, claim (A) is

5

> dismissed because petitioner has failed to satisfy either prong of the *Strickland* test for ineffective assistance of counsel.

CL18HC3012, pp. 134-35.

In an apparent effort to demonstrate that this finding was contrary to federal law, petitioner invokes several federal cases in his petition. See Dkt. No. 1-1, pp. 1-2. But the cases to which petitioner cites do not demonstrate that the decision of the state court was unreasonable. And, on habeas review, federal courts generally accord "particular deference" to the judgment of trial counsel during voir dire. See Gardner v. Ozmint, 511 F.3d 420, 426 (4th Cir. 2007) (quoting Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001)). Here, where petitioner's counsel asked the juror in question whether he could be impartial in light of his relationship with a law enforcement officer and received an answer in the affirmative, petitioner cannot, absent additional allegations or proof, demonstrate that the outcome of his case would have been different had the juror been further challenged by counsel. See Gardner, 511 F.3d at 426 (upholding state habeas court's denial of ineffective assistance claim where juror stated "she could decide the case based solely on the evidence in court" where petitioner offered no evidence of prejudice stemming from her presence on jury which convicted him). Consequently, this Court finds that the state court neither unreasonably applied nor acted contrary to established federal law in denying this claim. Claim 1(a) shall therefore be dismissed.[2]

---

[2] Petitioner has repeatedly situated the majority of his claims in the ineffective assistance of counsel framework, and there is no reason to believe that he did not do so intentionally. Even a deferential reading of Claim 1(a) as presented in the state court system and this Court does not leave room for an inference that petitioner intended to bring Claim 1(a) as a standalone claim of juror bias instead of as a claim of ineffective assistance. See Porter v. Zook, 803 F.3d 694, 699 (4th Cir. 2015) ("[I]t is easy to see how one variation[] of a juror bias claim ... could be overlooked.") (internal citations and quotations omitted). Even if petitioner did so intend, however, there is no indication that such a claim would have any merit. Petitioner does not state that the juror in question answered the voir dire question presented to him untruthfully, thereby foreclosing a juror bias claim raised pursuant to McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984) ("[A] party must first demonstrate that a juror failed to answer

ii.  *Claim 1(b)*

In Claim 1(b), petitioner argues that trial counsel was ineffective for failing to obtain a copy of a 911 call recording because counsel could have used that tape to impeach his son's testimony at trial. See Dkt. No. 1. The state habeas court dismissed this claim on the basis that it failed to satisfy either prong of the Strickland test.

> Petitioner speculates that the recording would have contradicted his son's testimony "to varying degrees" and had "impeachment value." The Court finds that at the outset, petitioner has failed to proffer the 911 tape and therefore cannot establish that counsel had a duty to obtain it or introduce it.
>
>> [W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a "habeas court cannot even begin to apply *Strickland*'s standards" because "it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance."
>
> *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (citation omitted). *See Muhammad v. Warden*, 274 Va. 3, 18, 646 S.E.2d 182, 195 (2007); *Hedrick v. Warden*, 264 Va. 486, 521, 570 S.E.2d 847, 862 (2002) (both finding habeas petitioner had not established deficient performance or prejudice because he failed to provide any evidence to support claim). The Court finds that for the same reasons petitioner has failed to show a reasonable probability of a different result at trial.
>
> Moreover, counsel did cross-examine petitioner's son about statements he made to the 911 operator. (Tr. 87-88). Petitioner's son acknowledged that he told the 911 operator that he had received an anonymous phone call that a person had been

---

honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."). Nor does plaintiff ever actually claim that the juror *was* biased in some capacity; he instead simply invokes in the abstract the constitutional promises of a fair trial and unbiased jury. See CL18HC3012, pp. 6-8; Dkt. No. 1-1, pp. 1-3. Consequently, any juror bias claim petitioner sought to raise would necessarily be an "implied bias" claim, a doctrine that covers only "exceptional" and "extraordinary" circumstances. See Smith v. Phillips, 455 U.S. 209, 222 (1982) (listing the following as examples of when implied bias claims may be viable: "the juror is an actual employee of the prosecuting agency, … the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.") (O'Connor, J. concurring). The petition raises no allegations of this nature. Because of this, and because of the fact that petitioner did not raise his claim as a standalone juror bias claim to begin with, the Court declines to engage in further discussion of this issue.

7

> shot at a residence and that he was not aware of any previous threats of violence. (Tr. 87-88). Petitioner's son did not deny making any of the statements to the 911 operator that petitioner's counsel asked about on cross-examination. Thus, counsel obviously knew about the content of the call and placed this impeachment evidence before the jury. Once the witness admitted making the statements counsel had no basis to introduce the tape. *See* Va. Rule Ev. 2:613. Petitioner has failed to proffer any evidence that the 911 call recording would have further impeached his son's testimony. *Id.* Thus he has failed to show a reasonable probability of a different result.

CL18HC3012, pp. 135-36.

Petitioner concedes that his attorney "knew about the content of the call" but argues that, absent introduction of the actual recording, the evidence "could not have been effectively placed before the jury." Dkt. No. 1. Petitioner, then, does not contest the fact that the information in the call *was* presented to the jury at least in part; he merely takes issue with his attorney's strategy and manner of introducing that information. In this case, because counsel presented the information to the jury in the form of testimony, presenting the call recording would have constituted presentation of cumulative evidence. And an attorney's failure to present cumulative evidence does not, generally speaking, constitute deficient performance. See Jenkins v. Comm'r, Ala. Dep't of Corr., 936 F.3d 1252, 1273 (11th Cir. 2019) (finding state court's conclusion that counsel was not ineffective for failing to present cumulative evidence "not unreasonable"). Petitioner similarly has not shown that the failure to present this cumulative evidence resulted in any prejudice to him. See Boutte v. Biter, 556 F. App'x 623, 624 (9th Cir. 2014) (finding no prejudice where presentation of police report detailing victim's drug overdose would have been cumulative of victim's testimony that she took prescription medications and had a "chemical disorder of major depression"). In summary, as the state habeas court held, petitioner has failed to demonstrate how introduction of the call—as opposed to the information it contained—would have changed the result of his criminal case. This Court holds that the state court did not act

8

unreasonably or in contravention of federal law in denying this claim. Claim 1(b) shall accordingly be dismissed.

### iii. Claim 1(c)

In Claim 1(c), petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's "improper statements" made during closing arguments. See Dkt. No. 1. The state habeas court dismissed this claim on the basis that it failed to satisfy either prong of the Strickland test.

> [Petitioner] argues that the prosecutor's statement improperly suggested that that [sic] the defendant was "the only person who wants to try and sell to you all that it is possible [for the defendant to have shot with the gun] from his waist [level] to ... point blank 12 inches from [his] wife's head." Petitioner argues that the prosecutor's comments were improper because they called for "an improper and impermissible inference" that he shot his wife, Delesha, at close range. Petitioner argues that there was "no conceivable benefit" to not objecting.
>
> The Court finds that counsel is not required to lodge an objection merely because he has "nothing to lose" by doing so. "This Court has never established anything aking to [a] 'nothing to lose' standard for evaluating Strickland claims." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).
>
> The Court further finds that objectively reasonable counsel could have decided not to object to these comments; because the decision not to object to argument of counsel, which is not evidence, is a tactical decision. See Evans v. Thompson, 881 F.2d 117, 121 (4th Cir. 1989). Even where testimony is objectionable counsel can decide that raising an objection merely could have emphasized the prosecutor's remarks. Id. at 125. A decision regarding whether to object during argument is thus, "a judgment trial attorneys make routinely." Id. See United States v. Molina, 934 F.2d 1440, 1448 (9th Cir. 1991) (failure to object to improper passage in prosecutor's closing argument not professionally unreasonable).
>
> The Court further finds that petitioner has failed to show a reasonable probability of a different result at trial had counsel objected to this statement. "A Commonwealth's Attorney has the right to argue the evidence and all reasonable inferences from the evidence." Duncan v. Commonwealth, 2 Va. App. 717, 730, 347 S.E.2d 539, 546 (1986). The medical examiner testified that the cause of death was an "intermediate range" penetrating gunshot wound to the head. (Tr. 162). He testified that the distance from the gun to the injury appeared from the evidence to have been less than a foot, but it "could" have been as much as 13

9

inches; he noted it was impossible to state the exact distance unless the firearm had been test fired. (Tr. 162, 164, 171).

Petitioner testified that he was standing in the middle of the bed and that his wife's head was at the end of the bed furthers from him when he shot her. (Tr. 243, 248). But the police testified that Delesha was in a kneeling position slumped down in the corner of the room between the bed and nightstand when they arrived. (Tr. 124). The police observed blood only on that corner of the bed; and blood and brain matter was on the night stand; no other evidence of a struggle appeared in the room. (Tr. 135). Thus, the Commonwealth's Attorney's argument was a reasonable comment on the evidence presented at trial. Therefor counsel had not [sic] basis for objecting to the argument.

Moreover, the Court instructed the jury that arguments were not evidence, and that the jury could not consider the arguments as evidence. (Tr. 53). Jurors are presumed to follow the instruction of the trial court. *Jordan v. Commonwealth*, 50 Va. App. 322, 329, 649 S.E.2d 709, 713 (2007) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005)). For all of these reasons, petitioner has failed to demonstrate a reasonable probability of a different result if counsel had objected to the argument.

This is particularly true in light of the overwhelming evidence of petitioner's guilt. Petitioner and his wife were having marital problems, she wanted to leave the marriage, but he did not. (Tr. 67-68, 75-76, 196). On the night petitioner killed his wife, petitioner was very upset because his efforts at reconciliation had not gone well; he called his son between four and eight times to talk about the situation. (Tr. 74-75). During one of those phone calls at 10:00 p.m., petitioner told his son that he was going to "kill her, and kill himself, do something crazy." (Tr. 76). He also asked to borrow his son's car because he had "something to do," and he did not "want to be seen." (Tr. 82).

At just before midnight he called his song and said, "Hey, I can't believe that I did it; I shot Delesha." (Tr. 82). Petitioner then went to the police station and told police he had been having a "domestic dispute" that his wife was a "bitch [who] wouldn't let him sleep for ten days straight;" he said "I fucked up," and "I shot her." (Tr. 106-07).

CL18HC3012, pp. 137-140.

The state habeas court's invocation of <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009), and <u>Evans v. Thompson</u>, 881 F.2d 117 (4th Cir. 1989), was apt and demonstrates that its decision not to grant relief with respect to Claim 1(c) was not unreasonable or contrary to federal law. It is also worth noting that petitioner's bare assertion that the prosecutor's remarks were

objectionable does not make it so. Petitioner argues that the prosecutor's words gave rise to an "impermissible" inference, but petitioner does not appear to argue *how* or *why* that inference was impermissible. Moreover, the record makes quite clear that the prosecutor did not raise these arguments without some basis; as the state habeas court noted, the prosecutor relied on evidence presented at trial in making the argument petitioner found objectionable. Additionally, the jury was instructed that the arguments did not themselves constitute evidence. In that light, then, petitioner has failed to demonstrate—here and in the state courts—that counsel (1) had any duty or basis to object to the prosecutor's argument and (2) that such an objection likely would have changed the outcome of the trial. Consequently, Claim 1(c) shall also be dismissed from this proceeding.

    iv.   <u>Claim 1(d)</u>

In Claim 1(d), petitioner claims that trial counsel was ineffective because he failed to ask prospective jurors whether they were related to the victim. The state habeas court dismissed this claim on the basis that it failed to satisfy either prong of the <u>Strickland</u> test.

> Petitioner has failed to satisfy either prong of the *Strickland* test for ineffective assistance of counsel. The prosecutor asked if any of the jurors knew the victim and all of them said no. (Tr. 29). Counsel had no obligation to ask that question when the prosecutor had already done so.
>
> And petitioner cannot prove *Strickland* prejudice. Petitioner merely speculates that one of the jurors was related the [sic] victim, but has offered no proof that his allegation is true or that any such juror sat on the panel. *Anderson*, 18 F.3d at 1221; *Muhammad*, 274 Va. at 18, 646 S.E.2d at 195; *Hedrick*, 264 Va. at 521, 570 S.E.2d at 862. Petitioner has failed to demonstrate a reasonable probability of a different result had counsel also asked if any of the jurors were related to the victim.

CL18HC3012, p. 140.

Petitioner insists that, even though the prosecutor had already asked whether any potential juror knew the victim, his attorney's failure to ask specifically whether the jurors were

11

the victim's relatives warrants the provision of relief. See Dkt. No. 1-1, p. 7. Petitioner asserts that there is a "likelihood that at least one venireman could have been within the *ninth* degree of consanguinity of affinity to the victim." Id. at p. 8. But petitioner does not even attempt to argue how such an attenuated connection to the victim would have any bearing on a juror's ability to decide a case on the evidence presented at trial. Consequently, he has failed to show that his desired question would have impacted his case. Additionally, the question posed by the prosecutor—whether any potential juror knew the victim—was broader than and therefore encompassed petitioner's preferred question. As the state court correctly noted, petitioner's counsel cannot be faulted to failing to seek redundant information from the jury. His decision not to do so did not represent inadequate performance under Strickland. This Court finds that the state court's decision was not unreasonable or contrary to federal law. Claim 1(d) is dismissed.

    v.    *Claim 1(e)*

In Claim 1(e), petitioner argues trial counsel was ineffective because he failed to move for a mistrial after the sheriff entered the jury room for several minutes while the jury examined the firearm during deliberations. See Dkt. No. 1. The state habeas court dismissed this claim on the basis that it failed to satisfy either prong of the Strickland test.

> When the jury asked to examine the firearm that had been admitted into evidence, the Court asked in either party objected to allowing the bailiff to take the evidence into the jury room for them to view. (Tr. 310-12). Neither party objected. (Tr. 310-12). The Court told the bailiff, not to discuss the firearm with the jury, but to simply remain in the jury room to make sure the gun was handled safely while the jury examined the gun. (Id.) According to petitioner, later in the day, petitioner asked counsel to move for a mistrial because the deputy had been in the jury room for three minutes, and counsel refused. (Habeas petition at 11).
>
> The Court finds that petitioner proffers no evidence and offers no authority that allowing the bailiff to take the firearm into the jury room, and to remain there to ensure the gun was handles [sic] safely while the jury examined it was improper. The firearm was evidence admitted at trial as an exhibit. And petitioner proffers no evidence that any extraneous evidence or improper communication took place.

12

> Thus, counsel was under no obligation to object to this procedure, and was not ineffective for failing to object to it. *See Correll*, 232 Va. at 470, S.E.2d at 361.
>
> The Court further finds that by the time petitioner asked counsel to move for a mistrial such a motion would have been untimely. The Virginia Supreme Court repeatedly has held that "if a defendant wishes to take advantage on appeal of some incident he regards as objectionable enough to warrant a mistrial, he must make his motion timely or else be deemed to have waived his objection." *Yeatts v. Commonwealth*, 242 Va. 121, 137, 410 S.E.2d 254, 264, 8 Va. Law Rep. 866 (1991) (citations omitted). To be timely, a motion for mistrial must be made "[w]hen a party has full knowledge of circumstances justifying a mistrial . . . ." *Crockett v. Commonwealth*, 187 Va. 687, 706-07, 47 S.E.2d 377, 386 (1948). In this case that would have been at the time the bailiff was in the room
>
> The Court further finds that counsel had already agreed to the procedure allowing the bailiff to take the evidence into the jury room. Petitioner has failed to demonstrate a reasonable probability that a mistrial would have been granted even if counsel had timely asked for a mistrial.

CL18HC3012, p. 140.

Petitioner asserts that, as an officer of the court, the bailiff / sheriff[3] who entered the jury room "carrie[d] great weight with [the] jury which he had been shepherding." See Dkt. No. 1. Citing Parker v. Gladden, 385 U.S. 363 (1966), he argues that "[t]here must be zealous guard against any action or situation which raises the slightest suspicion that the jury in a criminal case has been influenced or tampered with so as to be favorable to the state." See id. Unlike in Parker, however, in this case there is no indication whatsoever that the sheriff or bailiff communicated in any way with the members of the jury. Petitioner does not even speculate that any such communication occurred. See Dkt. No. 1. Instead, he merely invokes constitutional arguments and the notion of fairness without applying those arguments to his specific circumstances. He has failed to demonstrate that he was actually prejudiced through his attorney's failure to move for a mistrial. In this light, it is clear that the state habeas court's

---

[3] Petitioner alleges that a sheriff entered the jury room, see Dkt. No. 1, while respondent asserts that it was a bailiff, see Dkt. No. 12.

13

conclusions were neither unreasonable nor contrary to federal law. Accordingly, Claim 1(e) shall be dismissed.

  *vi.* *Claim 1(f)*

In Claim 1(f), petitioner argues that trial counsel was ineffective for failing to object to an instruction provided to the jury which stated that, "it is permissible to infer that every person intends the natural and probable consequences of his or her acts." See Dkt. No. 1. Petitioner claims that this instruction impermissibly "shifted the burden of proof on the element of intent" and thus warrants provision of relief. Id.

The record makes clear, and respondent concedes, that the state habeas court did not consider—or at least did not provide reasoning for its denial of—Claim 1(f). See CL18HC3012; Dkt. No. 12. As a result, it cannot be stated with certainty that the state court dismissed the claim on its merits, and this Court is constrained to provide the claim *de novo* review. See, e.g., Boyette v. Lefevre, 246 F.3d 76, 91 (2d Cir. 2001) (holding that *de novo* review, rather than AEDPA deference, is appropriate when the district court is unable to determine basis of state court's resolution of a habeas claim).

The Supreme Court of Virginia has directly addressed the validity of the jury instruction with which petitioner takes issue. In Schmitt v. Commonwealth, 262 Va. 127, 145 (2001), it held that the instruction in question "[does] not require jurors to draw any inference or alter the Commonwealth's burden of proving [the defendant's] criminal intent beyond a reasonable doubt" and thus held the instruction valid. Accordingly, any objection to the instruction on that ground would have proven futile, and an attorney cannot be held to have erred by failing to raise a futile objection. See Moody v. Polk, 403 F.3d 141, 151 (4th Cir. 2005). Consequently, petitioner's argument that his counsel was ineffective on this basis is meritless—his failure to

object, as a matter of law, did not constitute deficient performance—and this claim thus must be dismissed.[4]

### B.  *Claim 2 – Sufficiency of the Evidence*

Petitioner next claims that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt with respect to the elements of premeditation and deliberation. See Dkt. No. 1-1, p. 11. He specifically argues that the evidence presented established "reasonable doubt" that the killing of his wife was the result of an accident. Id. In support of this argument, petitioner states that his

> actions after the shooting were wholly consistent with [the shooting having been] an accident. He was in shock and felt suicidal. Petitioner turned himself in to police and complied with each and every request made of him, consistent with someone who has just accidentally shot another person. No scientific evidence disproved that the shooting was an accident.

Dkt. No. 1-1, pp. 12-13.

Federal habeas petitions that assert there was insufficient evidence to support a state court conviction should be granted only if "no rational trier of fact could have found proof of [petitioner's] guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). A federal court may only overturn a state court decision if that decision was "objectively unreasonable;" it may not overturn the decision simply because it disagrees with the outcome. Cavazos v. Smith, 565 U.S. 1, 3 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

---

[4] And to the extent petitioner seeks to assert a standalone claim that the jury instruction was itself contrary to federal law, such a claim would fail. The instruction in question was squarely in line with instructions upheld by federal courts nationwide. See United States v. Arthur, 544 F.2d 730, 737 (4th Cir. 1976) ("An instruction that it is reasonable to infer that a person ordinarily intends the natural and probable consequences of his voluntary acts has generally been held proper."); see also Dupuy v. Cain, 201 F.3d 582, 588 (5th Cir. 2000) (finding that an instruction that "[a]s a general rule it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted by him" did not prejudice the defendant because it only "provided for an allowable inference; it did not create the prohibited presumption").

15

Indeed, a reviewing court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5] Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)).

On direct appeal, the Court of Appeals of Virginia denied petitioner's claim regarding the sufficiency of the evidence. In pertinent part, it wrote:

> Sometime between September 10 and 11, 2014, the appellant shot and killed his wife, Delesha Bowden ("Delesha"), at their home in Chesterfield County. The appellant spoke to his son, Corey Bowden, Jr. ("Corey"), a few days before the murder to tell him that he and Delesha were having marital problems and he needed Corey to be there for him. Delesha made it clear that she was not having an extra-marital affair but "just had a friend." Corey helped the appellant put a futon in his office because he wanted his own space and somewhere comfortable to stay during their "rough patch."
>
> On September 10, 2014, the appellant and Delesha went out for dinner. The appellant stayed in touch with Corey by phone throughout the evening; they shared four to eight phone calls. Corey testified that the appellant was not pleased because it was "a very rough dinner." After the appellant pled his case, Delesha made a scene at the restaurant and stormed out. During one of the phone calls, the appellant told Corey that Delesha said he was not a good father, he was getting old, she wanted to move on, and she wanted other things with her life. Through the series of calls, it was apparent to Corey that the appellant was upset. He started telling Corey he was going to "kill her, kill himself, do something crazy." Corey characterized it as a normal reaction to being upset. However, Corey tried to keep the peace and called Delesha to suggest she not return home because his father "sounded very crazy" and was "talking kind of reckless." Delesha laughed and "brushed it off."
>
> Corey received a phone call around 10:30 p.m. in which the appellant said, "you'll never hear from me again, just know I love you." Corey thought the appellant was on the verge of committing suicide and pledged to stay up and call him every hour. During this call, the appellant also asked Corey to borrow his car. When asked his reason, the appellant replied, "I got something I want to do, you know, but my car is known and I don't want to be seen." Corey told the appellant to come over and offered to take him wherever he wanted to go. The

---

[5] In this light, petitioner's argument that there existed evidence from which a jury might conclude that the killing was an accident is irrelevant. At this juncture, the Court does not ask whether such evidence exists or was considered; it asks whether the jury's ultimate conclusion was objectively unreasonable.

16

appellant declined his offer. The appellant called Corey again right before midnight and said, "I can't believe that I did it ... I shot Delesha." Both Corey and the appellant called 911.

During cross-examination, Corey testified that he called 911 and told the operator that he had received an anonymous phone call about someone being shot at his father's residence. He also told the operator that he was not aware of any prior threats of violence. He did so because he did not believe his father's statements about killing Delesha to be credible. Detective Ray Ash of the Chesterfield County Police Department met Corey at the hospital in the early morning after the shooting. Corey told Detective Ash that he and the appellant were not close but they had spent the last couple of years rebuilding their relationship. He also told Ash that his father made a statement earlier in the evening about "going to Kill [Delesha]."

Corey met with the Commonwealth in preparation for trial. During the first meeting, Corey hesitated and told the prosecutor that he did not remember telling police about the appellant's statement about killing Delesha. The prosecutor told Corey he really needed to think about it because it was important for him to testify at trial. During the second meeting, Corey remembered what he had said before. The prosecutor told him how important it was for Corey to "say what [he] just said."

Corey also spoke to Dr. Evan Nelson who was tasked with evaluating the appellant's sanity at the time of the offense. Corey told Dr. Nelson that he did not take the appellant seriously; he thought the appellant was suicidal and "had no idea" that the appellant intended to kill Delesha. After his arrest, the appellant asked Corey to be his power of attorney and take care of some personal property matters related to his studio, vehicle, and storage unit. Corey relocated the recording studio to a friend's house, retitled a truck in his name, and took $14,000 and four pieces of jewelry from the appellant's storage units.

Officer Edward Harney of the Chesterfield Police Department worked as the desk officer overnight starting on the evening of September 10, 2014, when the appellant came in and said he had been having a domestic dispute. The appellant told Officer Harney that "the bitch wouldn't let [me] sleep for ten days straight" and he did not know what to do. After Harney tried to elicit more information and suggested temporary accommodations, the appellant paced around outside for a few minutes before returning to the window. He told Harney, "I fucked up, I shot her" and told him the gun was in the car. Officer Harney found a black firearm on the front seat with a handbag.

Police forced entry into the residence and found Delesha with a bullet wound between her eyes and brain matter and skin hanging from her forehead. She was gasping for air. There were no other injuries to the body. Investigators observed no evidence of struggle in the bedroom where the body was recovered. A single

cartridge casing was found on the bed. Delesha died at the hospital. The cause of death was an intermediate range penetrating gunshot wound to the head. A medical examiner supervising her autopsy could not determine the exact distance from which the shot was fired but estimated it to be thirteen inches or less. Testing revealed that the firearm recovered from the appellant's vehicle was the same weapon used to shoot Delesha.

The appellant testified in his own defense. He said that he and Delesha had been going through a period of uncertainty but there had been no argument at dinner. The appellant said that when he arrived home a little after 11:00 p.m., he was carrying his firearm in a holster because he was self-employed in a cash business. After about half an hour, he went upstairs and entered the bedroom where Delesha was already in bed. They discussed the possibility of having sex but Delesha declined. He told Delesha he was not feeling well and felt like killing himself. Delesha told him he needed to go to bed. The appellant was in the process of putting his weapon away but stood in the room for a moment and held the gun to his head with his eyes closed before he began nodding off and started to bring it down to his side. He then heard the "covers move real fast," and he opened his eyes to see something coming at him. According to the appellant, he stepped back, bumped into the television, and threw his hands up causing him to pull the trigger. The appellant claimed he did not intend to shoot Delesha and that he started crying and screaming her name. He posted a happy picture of them online and immediately received calls from his uncle and Corey. He asked them to call 911. He contemplated killing himself but was convinced to turn himself in to police.

Record. No. 0480-16-2, pp. 50-52.

Having reviewed the state court records, this Court fails to detect an unreasonable application of law or determination of facts in the Virginia Court of Appeals's opinion. See 28 U.S.C. § 2254(d)(1)-(2). The Court also concludes that the evidence presented and described above was sufficient such that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. In Virginia, "[t]o prove premeditated murder, the Commonwealth must establish: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." Archie v. Commonwealth, 14 Va. App. 684, 689 (1992) (internal quotations and citation omitted). "Premeditation and formation of an intent to

kill seldom can be proved by direct evidence. A combination of circumstantial factors may be sufficient." Rhodes v. Commonwealth, 238 Va. 480, 486 (1989). Additionally, a jury may infer that the killer acted with premeditation when there is evidence that a fatal wound is inflicted by a deadly weapon with little or no provocation. See Morris v. Commonwealth, 17 Va. App. 575, 578 (1994).

The evidence presented at trial was sufficient such that a rational factfinder could find petitioner guilty beyond a reasonable doubt. As the state appellate court aptly summarized:

> [O]n the evening of the murder, the appellant and his wife were not on good terms. They had spent time separate and apart. Delesha had a new "friend." During dinner, she expressed her displeasure with the appellant as a father and husband and told him she wanted to move on. The appellant told Corey he was going to kill Delesha. Later that night he asked Corey if he could borrow his car because he had something he wanted to do and did not want to be seen. Despite any conflict regarding Corey's interpretation of the appellant's behavior, the surrounding facts and circumstances include evidence that clearly demonstrates his specific intent to kill. After the appellant inflicted a fatal wound, Delesha was still alive. While the appellant ultimately called 911, he did not render aid but rather posted a picture online and left the scene. He then went to the police station where called Delesha a "bitch" and told Officer Harney that he "fucked up" and shot her.

Record. No. 0480-16-2, p. 54.

Because the Court finds that neither the jury which convicted petitioner nor the state appellate court which upheld that conviction acted unreasonably, Claim 2 will be dismissed.

## IV. Conclusion

For the foregoing reasons, petitioner's federal habeas claims lack merit. Consequently, respondent's motion to dismiss shall be granted, and this petition will be dismissed with prejudice through an order that will issue alongside this memorandum opinion.

Entered this 26 day of May 2020.
Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

19